**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23635-ALTMAN**

**JOSE ANGEL ANDUJAR**,

*Petitioner*,

v.

**WARDEN, FCI MIAMI**,

*Respondent*.
______________________________________/

# ORDER

The Petitioner, Jose Angel Andujar, has filed an Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 8] and a Memorandum of Law in Support ("Memorandum") [ECF No. 9], challenging the Bureau of Prisons' ("BOP") computation of his federal sentence. Andujar says that the BOP "is unlawfully executing his sentence" because it refuses to apply his good-conduct time, the First Step Act time credits he expects to earn, and the Second Chance Act "in the manner Congress prescribed." Amended Petition at 1. The Respondent counters that Andujar "failed to exhaust his administrative remedies[.]" Response [ECF No. 10] at 1. In reply, Andujar insists that exhaustion would have been futile. *See* Reply [ECF No. 11] at 1. After careful review, we agree that Andujar inexcusably failed to exhaust his administrative remedies. We therefore **DISMISS** the Amended Petition **without prejudice**.

## THE FACTS

On December 14, 2022, a federal judge in the Middle District of Florida sentenced Andujar to 152 months in prison for conspiring to distribute and to possess with intent to distribute five kilograms or more of cocaine. *See* Judgment [ECF No. 10-2] at 1–2. Andujar was "remanded to the custody of the United States Marshal," *id.* at 2, and arrived at his designated institution, FCI Butner

Low, on January 31, 2023, *see* Declaration of Steven Verdejo ("Verdejo Decl.") [ECF No. 10-3] ¶ 12. When he filed this case, Andujar was confined at Federal Correctional Institution Miami ("FCI Miami"). *See* Am. Pet. at 1. He has since been transferred to Federal Correctional Institution Edgefield ("FCI Edgefield"). *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (BOP register number: 58450-018) (last visited Oct. 2, 2026) (listing Andujar's location as "Edgefield FCI").[1] When the Respondent filed its Response, the BOP had credited Andujar with "360 days" of First Step Act ("FSA") time credits and projected his release for May 25, 2031. Public Information Inmate Data [ECF No. 10-1] at 2.

On July 22, 2025, Andujar filed an informal complaint with his unit team at FCI Miami, asking the BOP to start his FSA credits on the date he was *sentenced*, rather than on the date he arrived at FCI Butner. *See* Verdejo Decl. ¶ 11 (explaining that Andujar's informal complaint sought "recalculation of his FSA Time Credits, using his sentencing date of December 14, 2022"); *see also* Informal Resolution [ECF No. 10-3] at 9 ("I am requesting that the BOP begin my calculation for FSA credits as of my sentencing date: 12/14/2022, not as of . . . the date I arrived at my first facility[.]"). A week later, Andujar's unit manager responded that, under BOP policy, inmates "begin earning Time credits . . . once arrived or surrendered at [their] designated facility." Informal Resolution at 9 (cleaned up).

Andujar then filed a formal Request for Administrative Remedy ("BP-9 Form") with his Warden, seeking the same relief. *See* BP-9 Form [ECF No. 10-3] at 10 ("I am requesting that the BOP begin my calculation for FSA credits as of my sentencing date[.]"). The Warden received the BP-9

[1] Andujar's transfer doesn't affect our jurisdiction. When he filed this case, Andujar was confined at FCI Miami, which is in our District, and he named FCI Miami's Warden as the Respondent. *See* Petition at 1 (listing his place of confinement as "Federal Correctional Institute-Miami" and naming "Warden Heuett, FCI-Miami" as the Respondent); Am. Pet. at 2 (naming the "Warden of FCI Miami"). And "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

Form on August 6, 2025, and denied it on August 29, 2025, explaining that "[a]n inmate cannot earn [FSA time credits] when not in [BOP] custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility[.]" Warden's Response [ECF No. 10-3] at 11 (quoting Fed. Bureau of Prisons, Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, at 10 (Nov. 18, 2022)). Andujar appealed to the BOP's Southeast Regional Director ("BP-10 Form"). *See* Verdejo Decl. ¶ 14 ("Mr. Andujar filed an administrative remedy with the Southeast Regional Director's office."). The Regional Office received his appeal on September 8, 2025, and the BOP's records show that the appeal was denied on September 23, 2025. *See* Administrative Remedy Generalized Retrieval ("ARGR") [ECF No. 10-3] at 7; *see also* Verdejo Decl. ¶ 14 ("The Southeast Regional Director denied the administrative remedy."). The BOP's grievance history lists no appeal to the BOP's Central Office. *See* ARGR at 5–7 (listing "4 remedy submission(s)" and none to the Central Office).

Meanwhile, before the Warden had even received his BP-9 Form, Andujar signed and mailed his first § 2241 petition, which asked us to order the BOP to "re-calculate [his] FSA credits using the proper date of 'commence[ment]' according to 18 USC §3585(a), not BOP PS 5410.01[.]" Petition [ECF No. 1] at 8. We ordered the Respondent to respond to the Petition. *See generally* Order to Show Cause [ECF No. 6]. Before the Respondent did so, however, Andujar filed his Amended Petition and Memorandum. *See generally* Am. Pet.; Mem. The Respondent then filed its Response, and Andujar replied, so the Amended Petition is now ripe for adjudication.

## THE LAW

"[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241." *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008) (citation omitted). But "prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements." *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir.

2004), *abrogated on other grounds by Santiago-Lugo v. Warden*, 785 F.3d 467, 475 n.5 (11th Cir. 2015). That requirement isn't jurisdictional, but it's "still a requirement[,]" and courts may not "disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Santiago-Lugo*, 785 F.3d at 475 (citation omitted).

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit outlined "a two-step process" for deciding whether a prisoner has exhausted his administrative remedies. *Id.* at 1082. The Eleventh Circuit has since applied that process to § 2241 petitions. *See Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856 (11th Cir. 2020) (applying *Turner* "in a § 2241 proceeding"). *First*, the court must "look to the inmate's and respondent's factual allegations, and if they conflict, take the inmate's version of the facts as true." *Ibid.* (citing *Turner*, 541 F.3d at 1082). "If, in that light, the [court] concludes that the inmate failed to exhaust, the petition 'must be dismissed.'" *Ibid.* (quoting *Turner*, 541 F.3d at 1082). *Second*, if the petition survives the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Ibid.* (quoting *Turner*, 541 F.3d at 1082). And, "at that second step, the respondent bears the burden of proving that the inmate has failed to exhaust all available administrative remedies." *Ibid.*

Federal prisoners exhaust their administrative remedies through the BOP's Administrative Remedy Program. *See* 28 C.F.R. § 542.10 *et seq*. That program has four levels. *First*, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *Id.* § 542.13(a). *Second*, if informal resolution fails, the inmate must submit a "formal written Administrative Remedy Request" (a BP-9 Form) to the Warden within "20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a). *Third*, an inmate "who is not satisfied with the Warden's response may submit an Appeal" (a BP-10 Form) "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). *Fourth*, an inmate "who is not satisfied

with the Regional Director's response may submit an Appeal" (a BP-11 Form) "to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Ibid.* An "[a]ppeal to the General Counsel is the final administrative appeal." *Ibid.* Each request must be limited to "a single complaint or a reasonable number of closely related issues," *id.* § 542.14(c)(2), and "[a]n inmate may not raise in an [a]ppeal issues not raised in the lower level filings," *id.* § 542.15(b)(2). The regulations also impose response deadlines on the BOP—"20 calendar days" for the Warden, "30 calendar days" for the Regional Director, and "40 calendar days" for the General Counsel—and, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* § 542.18.

An inmate has "not fully exhausted his administrative remedies until he has appealed" through each of these levels, up to and including the General Counsel. *Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994); *see also Parviz v. Morris*, 2025 WL 2160152, at *3 (S.D. Fla. July 30, 2025) (Altman, J.) (explaining that an inmate who fails to "timely (and properly) appeal her grievance through all . . . tiers of the Administrative Remedy Program" has "failed to exhaust her administrative remedies" (citations omitted)).

## ANALYSIS

In his Amended Petition, Andujar asks us to order the BOP to recalculate his sentence so that he'll be moved into "prerelease custody (Residential Reentry Center and/or Home Confinement)"—that is, a halfway house or home confinement—years earlier than the BOP now predicts. Am. Pet. at 7; *see also id.* at 1 (claiming that he's "entitled to a prerelease custody date years earlier than the [BOP]'s posted date"). From what we can tell, Andujar's math works like this. He wants the BOP to count not just the FSA time credits he's already earned, but also the FSA credits he *expects* to earn over the rest of his sentence, for a total of 1,938 days of what he calls "projected" credits. *Id.* at 3. He *then* wants the BOP to use 365 of those days to start his term of supervised release a year early (what he calls "the

FSA year"); as for the remaining 1,573 days, he wants the BOP to apply them toward an earlier transfer to prerelease custody. *See ibid.* (explaining that the BOP should "[h]old back the statutory 1-year FSA credit to 'pay for' the supervised-release year," leaving "1,573 days remaining for prerelease placement"). And he wants the BOP to move that transfer date up by another twelve months under the Second Chance Act ("SCA"), 18 U.S.C. § 3624(c). *See id.* at 4 (explaining that his calculation "stacks SCA after FSA, capped at 12 months"). By Andujar's count, then, he was entitled to prerelease custody on March 9, 2026. *See ibid.* ("[T]he lawful prerelease custody date is March 9, 2026—not June 24, 2031.").

Out of all this, we've liberally construed four grounds for relief: (1) an argument that the BOP must "hold back the FSA year" and "apply the remaining projected credits to set a conditional prerelease date," *id.* at 5; (2) an allegation that the BOP unlawfully refuses to "[s]tack" his SCA time on top of his FSA credits, *ibid.*; (3) a claim that the BOP's "refusal to use projected credits and to stack SCA unlawfully extends [his] confinement beyond the lawful term," in violation of 18 U.S.C. § 3585(a), *ibid.*; and (4) an assertion that the BOP acts arbitrarily and capriciously when it limits or delays the use of his credits by, in his words, "cutting off credits at [halfway-house] eligibility, double-charging the FSA year, or withholding projected-credit placement until late in the sentence," *ibid.*

The Respondent says that Andujar never exhausted any of these arguments with the BOP. *See* Resp. at 1 (arguing that "Andujar failed to exhaust his administrative remedies"). Since the Respondent has properly asserted the exhaustion defense, we can't grant Andujar relief unless either (1) he exhausted his administrative remedies or (2) his failure to do so can be excused. *See Santiago-Lugo*, 785 F.3d at 475 (explaining that courts may not "disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense"). As we'll explain, Andujar can't satisfy either condition. Before we get to exhaustion, though, we'll address two threshold matters.

*First*, Andujar has actually filed *two* petitions. In his original Petition, Andujar asked us to order the BOP to start his FSA credits on his sentencing date. *See* Petition at 8 (asking us to "[o]rder the BOP to immediately re-calculate [his] FSA credits using the proper date of 'commence[ment]' according to 18 USC §3585(a)"). In his Amended Petition, though, Andujar raises the four grounds we've just described and shifts his focus from *when* his FSA credits began to accrue to *how* the BOP must project and apply them. *See, e.g.*, Am. Pet. at 5 (arguing that the BOP must "apply the remaining projected credits to set a conditional prerelease date" and that "SCA time stacks after FSA"). Andujar was free to amend once "as a matter of course" before the Respondent filed its Response. FED. R. CIV. P. 15(a)(1); *see also* 28 U.S.C. § 2242 (providing that a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). But "[a]n amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (quoting *Procter & Gamble Def. Corp. v. Bean*, 146 F.2d 598, 601 n.7 (5th Cir. 1945)); *see also Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (same). So, we'll treat Andujar's Amended Petition (with its corresponding Memorandum) as the operative pleading in the case.

*Second*, Andujar's Amended Petition names two Respondents: the "Warden of FCI Miami" and the "Director of the BOP." Am. Pet. at 2. But when a petitioner challenges his "present physical confinement," "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also id.* at 435 ("[T]he proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or

some other remote supervisory official."). So, we'll **DISMISS** the BOP Director as an improperly named Respondent.[2]

With that out of the way, we'll address the Amended Petition.

**I. Andujar Didn't Exhaust His Administrative Remedies**

At *Turner*'s first step, we look to the parties' factual allegations and, "if they conflict, take the inmate's version of the facts as true." *Blevins*, 819 F. App'x at 856. If Andujar's version shows that he failed to exhaust his remedies, the Amended Petition "must be dismissed." *Ibid.* (quoting *Turner*, 541 F.3d at 1082). Andujar notably doesn't argue that he took his habeas claims through every level of the BOP's Administrative Remedy Program. He contends instead that exhaustion would have been futile. *See* Am. Pet. at 6 (asserting that he "pursued available remedies to the extent practicable" and that "[f]urther administrative processing would be futile"); Mem. at 4 (arguing that, "[w]here exhaustion would be futile, . . . courts may reach the merits without further delay"); Reply at 1 (arguing that "the BOP's . . . reliance on BOP Program Statement §5410.01" "caus[es] futility"). Because the parties' accounts don't conflict on this point, we can resolve this exhaustion issue at *Turner*'s first step.

[2] Two more wrinkles. *One*, parts of the Response describe the claim Andujar raised in his original Petition rather than the claims he now asserts in his Amended Petition. *See, e.g.*, Resp. at 2 (describing Andujar as contesting "the date he became eligible to earn First Step Act Time Credits"). But the Response still expressly opposes the Amended Petition. It identifies the Amended Petition and Memorandum—not the original Petition—as the filings it opposes, *see* Resp. at 1 ("Jose Angel Andujar petitions this Court for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (CVDEs 8, 9)."), and it asks us to deny the Amended Petition because "Andujar failed to exhaust his administrative remedies," *ibid.* It then supports that argument with the BOP's records of every grievance Andujar has filed "during his incarceration with the Bureau of Prisons." *Id.* at 5; *see also* Verdejo Decl. ¶ 10 ("[T]he database indicates there are four administrative remedies."). As we'll explain, those records show that Andujar never exhausted the Amended Petition's claims. And Andujar doesn't contest those records. *Two*, Andujar's Reply reverts to his original theory and asks us to "[r]ecalculate FSA credits using [his] sentencing day as [his] first Needs Assessment date." Reply at 5. But Andujar abandoned that claim when he didn't reassert it in his Amended Petition, and "we don't consider arguments a party makes for the first time only in reply." *Ether v. Dixon*, 2022 WL 1908918, at *23 (S.D. Fla. June 3, 2022) (Altman, J.) (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)). In any event, as we'll explain, Andujar didn't fully exhaust that claim either.

Nevertheless, even if we proceeded to *Turner*'s second step—where we make findings of fact and where the Respondent bears the burden of proving that Andujar failed to exhaust—the undisputed record shows that Andujar didn't exhaust his administrative remedies. *See Blevins*, 819 F. App'x at 856 (explaining that, at "that second step," the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion" and "the respondent bears the burden of proving that the inmate has failed to exhaust all available administrative remedies" (cleaned up)).

Start with the BOP's records, which show that Andujar has filed four grievances while in BOP custody. *See* Verdejo Decl. ¶ 10 (explaining that the BOP's "SENTRY database pertaining to administrative-remedy records for Jose Angel Andujar" shows "four administrative remedies"). Two of Andujar's grievances were 2024 appeals of a Discipline Hearing Officer's ("DHO") decision, which have nothing to do with his FSA credits. *See* ARGR at 6 (describing two grievances as a "DHO appeal" (cleaned up)). The other two—his BP-9 Form and his BP-10 Form—concerned his FSA credits, but not the claims he raises in his Amended Petition. In those grievances, he'd asked the BOP to "begin [its] calculation for FSA credits as of [his] sentencing date," to start his "first Needs Assessment" on that date too, and to "produce a new FSA Time Assessment worksheet reflecting the requested changes." BP-9 Form at 10 (cleaned up); *see also* Informal Resolution at 9 (requesting that the BOP "begin my calculation for FSA credits as of my sentencing date"); ARGR at 7 (describing both the BP-9 Form and the BP-10 Form as "requesting recalculation of FSA credits" (cleaned up)). Neither Andujar's informal complaint nor his BP-9 Form said anything about the issues he raises in his Amended Petition—*e.g.*, projecting his future credits, holding back the FSA year, stacking SCA time, or the placement practices he now calls arbitrary and capricious. *See generally* BP-9 Form; Informal Resolution. And, because Andujar didn't raise those issues informally or with the Warden, he couldn't have added them on appeal. *See* 28 C.F.R. § 542.15(b)(2) ("An inmate may not raise in an Appeal issues not raised in the lower level filings."). Given this undisputed record, it's clear that Andujar didn't

"place[ ] the administrative authority on notice of all issues in contention [so as] to allow the authority an opportunity to investigate those issues." *McCormick v. United States*, 2023 WL 5901189, at *2 (S.D. Fla. Sept. 11, 2023) (Altman, J.) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004)).

And the one FSA-credit request Andujar *did* pursue also went unexhausted. The BOP's records show that Andujar's BP-10 Form was denied on September 23, 2025. *See* ARGR at 7; Verdejo Decl. ¶ 14 ("The Southeast Regional Director denied the administrative remedy.").[3] The BOP's grievance history, generated on September 25, 2025, shows no appeal of that denial to the General Counsel. *See* ARGR at 5–7 (showing no grievance with the "-A" suffix that marks an appeal to the Central Office); Verdejo Decl. ¶ 6 (explaining that the BOP appends an "-A (for BP-11s filed with the Central Office)"). And Steven Verdejo—FCI Miami's Executive Assistant, whose duties "include acting as the Administrative Remedy Clerk"—attests that Andujar "has not exhausted his administrative remedies prior to filing in [this] Court." Verdejo Decl. ¶¶ 3, 15.

As we've said, Andujar doesn't dispute any of this. He never claims—not in his Amended Petition, his Memorandum, or his Reply—that he appealed to the General Counsel, and he hasn't offered anything to contradict the BOP's records or Verdejo's declaration. *See generally* Am. Pet.; Mem.; Reply. On this unrebutted record, we find that Andujar never presented the Amended Petition's claims to the BOP and never took his one FSA-credit request through every level of the Administrative Remedy Program, up to and including the General Counsel. So, whether we stop at *Turner*'s first step

[3] Apparently, the BOP couldn't retrieve the BP-10 Form itself. *See* Verdejo Decl. ¶ 14 (explaining that, "[d]ue to the government shutdown, the regional administrative remedy . . . could not be retrieved in time"). But the BOP's records still show that Andujar filed a BP-10 Form appealing the denial of his BP-9 Form and that the Regional Director denied that appeal. *See ibid.* ("The Southeast Regional Director denied the administrative remedy."). When an inmate appeals, his appeal "maintain[s] the same identifying number" as the grievance he's appealing, with an "-R (for BP-10s filed at the Regional Office)" added to the end. *Id.* ¶ 6. And the BOP's records list Andujar's BP-9 Form as number "1249833-F1" and his BP-10 Form as number "1249833-R1," and those records describe both as "requesting recalculation of FSA credits." ARGR at 7 (cleaned up).

or proceed to its second, Andujar failed to exhaust his administrative remedies. *See Parviz*, 2025 WL 2160152, at *3 (explaining that an inmate who fails to "appeal her grievance through all . . . tiers of the Administrative Remedy Program" has "failed to exhaust her administrative remedies").

**II. Futility**

As we've said, Andujar urges us to excuse his failure to exhaust because exhaustion would have been futile. On this point, as best we can tell, he advances three arguments: (1) that BOP officials would have reflexively denied any appeal because they follow Program Statement 5410.01—the BOP's "Procedures for Implementation of" the First Step Act's time-credit provisions, *see* Am. Pet. at 6 ("Further administrative processing would be futile[.]"); Reply at 1 (arguing that "the BOP's . . . reliance on BOP Program Statement §5410.01" "caus[es] futility"); (2) that exhaustion isn't required because his claims turn "purely on statutory interpretation rather than factual development," Mem. at 4; and (3) that pursuing the rest of the BOP's administrative-remedy process "would cause irreparable injury by extending unlawful confinement," Am. Pet. at 6; *see also* Mem. at 4 ("[E]very day of unlawful incarceration is an irreparable injury."). For two reasons, none of these arguments excuses his failure to exhaust.

*First*, we decline to excuse exhaustion merely because Andujar predicts that the BOP will deny his request. As far as we can tell, the Eleventh Circuit hasn't decided whether a futility exception applies to § 2241's exhaustion requirement. The closest it has come is an unpublished decision that remanded for the district court to consider, "in the first instance," a petitioner's objection that exhaustion "would take too much time," without deciding whether that objection could succeed. *Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020). In the meantime, we agree with the district courts in our Circuit that have declined to excuse exhaustion on futility grounds—especially where, as here, the futility is merely *perceived*. *See, e.g.*, *Carrera v. United States*, 2025 WL 1233979, at *5 (S.D. Fla. Apr. 29, 2025) (Ruiz, J.) ("[V]arious district courts have accepted that there is no 'futility' exception to

the exhaustion requirement for claims seeking Time Credits under the FSA." (listing cases)); *Goldenberg v. Heuett*, 2025 WL 3760765, at *3 (S.D. Fla. Dec. 30, 2025) (Bloom, J.) (finding a petitioner's "futility argument . . . unpersuasive" because, "[i]n the Eleventh Circuit, 'there are grounds for doubt that a futility exception is available on a § 2241 petition'" (quoting *Tankersley v. Fisher*, 2008 WL 4371797, at *3 (N.D. Fla. Sept. 22, 2008) (Rodgers, J.))); *McCormick*, 2023 WL 5901189, at *2 (holding that petitioners challenging FSA credit calculations "must exhaust their available remedies, even if exhaustion appears to be futile").

*Second* (and in any event), even courts that entertain a futility exception apply it "only in 'extraordinary circumstances,'" and the petitioner "bears the burden of demonstrating the futility of administrative review." *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). For two reasons, Andujar hasn't carried that burden.

*One*, Andujar's first and second arguments—that BOP officials would have reflexively denied his appeals because they follow their own Program Statement, and that his claims turn purely on statutory interpretation—don't establish an "extraordinary circumstance." After all, if an agency's adherence to its own policy were enough, exhaustion would be excused in every case in which the agency has a policy and follows it. And the BOP's administrative process serves a purpose even when the dispute turns on how to read a statute. In the Prison Litigation Reform Act ("PLRA") context, the Eleventh Circuit has explained that, "[d]uring the administrative grievance process, the BOP [can] review its interpretation and correct any mistakes it might find before the federal judiciary [becomes] involved." *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998). And, "[e]ven if the BOP decided not to revise its interpretation," it "at least would be able to explain why it believed its interpretation properly construed" the statute. *Ibid.* The same reasoning applies here. The Regional Director and the

General Counsel could have recalculated Andujar's credits or explained why they wouldn't do so.[4] *See Council v. Washington*, 2025 WL 3461553, at *11 (M.D. Ala. Dec. 2, 2025) (rejecting a petitioner's argument that his "failure to exhaust administrative remedies should be excused because his § 2241 petition involves a question of statutory interpretation" and explaining that "the BOP's general counsel has the authority to change agency policy").

*Two*, Andujar's third argument—that exhaustion delays cause him harm—fails too. In Andujar's view, the BOP should have moved him to prerelease custody already, so every day he spends in the administrative process prolongs an unlawful confinement. *See* Mem. at 4 ("Sentence-calculation errors are quintessentially time-sensitive, because every day of unlawful incarceration is an irreparable injury."); Am. Pet. at 6 (arguing that further administrative processing "would cause irreparable injury by extending unlawful confinement"). Outside the habeas context, the Supreme Court has recognized that a litigant may be excused from a judge-made exhaustion requirement where he "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (citations omitted), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006).[5] But Andujar never gave the BOP a chance to resolve the claims he

[4] Andujar's reliance on *Bradshaw v. Carlson*, 682 F.2d 1050 (3d Cir. 1981), is misplaced. *Bradshaw* held that "exhaustion of administrative remedies is not required when the issue 'involves only statutory construction,'" *id.* at 1052, but that's the law of the Third Circuit, not ours. The Eleventh Circuit hasn't adopted that exception, and two courts in our District recently rejected the same argument. *See Goldenberg v. Heuett*, 2025 WL 3760765, at *2–3 (S.D. Fla. Dec. 30, 2025) (Bloom, J.) (rejecting a petitioner's argument "that exhaustion is futile because the issue presented is one that consists purely of statutory construction"); Order, *Mithavayani v. Heuett*, No. 25-cv-25187 (S.D. Fla. Apr. 16, 2026), ECF No. 9 at 11 (Altonaga, C.J.) (finding that "this Circuit is unlikely to adopt a futility exception for challenges to the BOP's interpretation of federal law").

[5] *McCarthy* wasn't a habeas case. It involved a federal prisoner's *Bivens* claim for money damages, and Congress later displaced its holding for prisoner suits like that one. *See Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006) (explaining that, before the PLRA, exhaustion wasn't required "if the prisoner sought only money damages and such relief was not available under the relevant administrative scheme" (citing *McCarthy v. Madigan*, 503 U.S. 140, 150–51 (1992))). Because § 2241's exhaustion requirement is also judge-made, we'll assume (without deciding) that *McCarthy*'s irreparable-harm principle might apply here. *Cf. Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020) (noting that "the exhaustion

now advances here, and he didn't appeal his one FSA-credit request beyond the Regional Director. *See generally* Informal Resolution; BP-9 Form; *see also* ARGR at 5–7. He can't blame the BOP's pace for that. If the BOP had taken too long at any level, Andujar could have "consider[ed] the absence of a response to be a denial at that level" and moved on. 28 C.F.R. § 542.18. And we know that he used that same process in 2024 to appeal a disciplinary decision. *See* ARGR at 6 (describing two grievances as a "DHO appeal" (cleaned up)). Having made no attempt to present these claims to the BOP, Andujar can't show that the BOP's process would have been too slow to afford him adequate relief.

One last point. Andujar frames all three of his arguments in terms of futility. But there's a second ground for excusing exhaustion—*viz.*, that the process wasn't available to Andujar at all. The Eleventh Circuit has applied three categories of unavailability—a "dead end," an "opaque" process, and "machination, misrepresentation, or intimidation"—to § 2241 petitions, *see Blevins*, 819 F. App'x at 856 & n.3 (quoting *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)), and it has recognized that exhaustion is unnecessary "where the administrative remedy will not provide relief commensurate with the claim," *Boz v. United States*, 248 F.3d 1299, 1300 (11th Cir. 2001) (quoting *Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989)), *abrogated on other grounds by Santiago-Lugo*, 785 F.3d at 475 n.5. But Andujar hasn't presented an unavailability argument here. He never claims that anyone at the BOP obstructed his use of the process or that the process couldn't afford him the relief he seeks. *See generally* Am. Pet.; Mem.; Reply.[6]

---

requirement in § 2241 cases is 'judge-made,' rather than jurisdictional"). Even on that assumption, Andujar's argument fails.

[6] The only allegation that anyone at the BOP interfered with his grievances appears in Andujar's initial memorandum, which claimed that the BOP relied on "manipulating their own administrative remedy . . . process through delay tactics on inmates who rely on the BOP's control of the Prison Mail System." Initial Mem. [ECF No. 1-1] at 4. Two points here. *One*, the Amended Petition and Memorandum superseded that earlier filing, so we won't consider it. *Two*, even crediting that allegation, Andujar identifies no specific filing or attempted filing of *his own* whose handling prevented him from exhausting his remedies. What we *do* know is that the Warden and the Regional Director received and acted on his administrative remedy forms. *See* Warden's Response at 11 ("This is in response to your

Because Andujar failed to exhaust his administrative remedies, and because he hasn't shown any basis for excusing that failure, we **DISMISS** the Amended Petition.

* * *

We therefore **ORDER AND ADJUDGE** as follows:

1. Jose Angel Andujar's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 8] is **DISMISSED without prejudice** for failure to exhaust administrative remedies.
2. The Director of the Bureau of Prisons is **DISMISSED** as an improperly named Respondent.
3. Any request for an evidentiary hearing is **DENIED** because the exhaustion ruling rests on facts Andujar doesn't dispute. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record . . . otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").
4. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**.
5. The Clerk of Court shall **CLOSE** this case.

---

Request for Administrative Remedy received August 6, 2025[.]"); Verdejo Decl. ¶ 14 ("The Southeast Regional Director denied the administrative remedy."). That those officials ruled against Andujar doesn't make the process unavailable. The question, rather, is whether the process could have afforded him the relief he seeks, and it plainly could have. The Program allows an inmate to "seek formal review of an issue relating to any aspect of his/her own confinement," 28 C.F.R. § 542.10(a), including, as Andujar's own BP-9 Form shows, the BOP's calculation of his FSA credits, *see* Warden's Response at 11 (addressing Andujar's request that the BOP "re-calculate [his] First Step Act Credits").

**DONE AND ORDERED** in the Southern District of Florida on October 6, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Jose Angel Andujar, *pro se*
counsel of record